IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY GILARNO individually and doing business as GILARNO'S AUTO REPAIR INC. also known as GILARNO'S AUTO REPAIR,<br>Plaintiff,<br><br>v<br><br>THE BOROUGH OF FREEDOM, THE BOROUGH COUNCIL OF THE BORO OF FREEDOM, JOHN V. KAERCHER, VICTORIA H. GRECO, JAQUELINE GOLLETTI, DARL ALLMAN, DEBORAH DEDOMINICUS individually and in their capacity as Council persons and DONALD ZAHN individually and in his capacity as Mayor of the Borough of Freedom<br>Defendants. | )<br>)<br>)<br>) 2:10-cv-71<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the MOTION TO DISMISS (Document No. 4), with brief in support. Plaintiff filed a Response in Opposition to the Motion to Dismiss (Document No. 6). Defendants then filed a MOTION TO STRIKE PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Document No. 9). Subsequently, Plaintiff filed a First Amended Memorandum of Law Against All Defendants' Action to Dismiss (Document No. 10). Accordingly, the MOTION TO STRIKE PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Document No. 9) will be **DENIED AS MOOT**. Defendants have filed a Reply Brief (Document No. 12) and the Motion to Dismiss is now fully briefed and ripe for disposition.

Factual and Procedural Background

This case arises out of unsuccessful efforts by local officials to enforce an ordinance regarding "nuisance vehicles." Since 1993, Plaintiff Gilarno has owned and operated an auto repair and towing business– the only such business in the Borough of Freedom, Pennsylvania

(the "Borough").  The individual Defendants are various local elected officials of the Borough.

Gilarno had been the exclusive provider of towing services for the Borough from 1993-2007. The Complaint alleges that he was publicly critical of the Mayor and council members on numerous occasions, which led to a well-known personal animus between the parties.  On August 28, 2007, the Borough solicitor sent Gilarno a Notice that he was in violation of Ordinance 197-3(B) (Permits for the Storage of Motor Vehicle Nuisances), because several motor vehicles were stored outside of his business building and Gilarno's property did not have an appropriate fence.  The letter stated that if the conditions were not remedied within ten days, Gilarno would face fines of $300 per day/per violation.   In 2008, the Borough stopped using Gilarno for repair and towing services.

The applicable Ordinance provisions were amended on several occasions and are attached to the Complaint as Exhibit D (collectively, the "Ordinance").  As relevant here, the Ordinance defines the violation as a summary offense and authorizes the Borough to enter the premises to take corrective measures.  Importantly, the Ordinance also states:

> Section 8.     Remedies not Mutually Exclusive.
>
> The remedies provided herein for the enforcement of this Ordinance or any remedy provided by law, shall not be deemed mutually exclusive; rather they may be employed simultaneously or consecutively at the option of the Borough of Freedom.

On October 16, 2007, the Chief of Police issued a non-traffic criminal citation to Gilarno. On October 24, 2007, the Borough solicitor issued a memorandum to various Borough employees and officials which directed them not to communicate with Gilarno on the topic of the pending litigation.  Complaint Exhibit F.  On February 14, 2008, a police officer was suspended

for, among other things, disregarding this directive. On February 20, 2008, the directive was modified to clarify that communications with Gilarno in his role as fire chief were permitted.

Magisterial District Judge Edward Howe conducted a hearing on February 7, 2008, and found Gilarno "Not Guilty" of violating the Ordinance. The Borough did not file an appeal. Instead, on March 21, 2008, the Borough filed a civil complaint in equity against Gilarno in the Court of Common Pleas of Beaver County, Pennsylvania (the "Equity Action"). The Equity Action contained the same allegations as the earlier criminal citation but sought a Court order that required Gilarno to erect a fence around his property, in addition to penalties under the ordinance. On July 9, 2009, a judge of the Court of Common Pleas granted summary judgment in favor of Gilarno, on the ground that the Borough had failed to specifically identify the vehicles which allegedly constituted the nuisance. This litigation followed.

Gilarno now asserts claims against the Borough and the individual Defendants under the Dragonetti Act, 42 Pa.C.S.A. § 8351, for Wrongful Use of Civil Proceedings. Plaintiff also asserts claims under 42 U.S.C. § 1983, for alleged violations of his due process, First Amendment and Equal Protection rights.[1]

Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the Complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

---

[1] The Complaint conclusorily recites a litany of other claims that Gilarno has apparently abandoned.

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). That is, the Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that FED. R. CIV. P. 8 requires only a short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 552-53). Additionally, the Supreme Court did not abolish the FED. R. CIV. P. 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* (citing *Twombly*, 550 U.S. at 553).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a FED. R. CIV. P. 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a FED. R. CIV. P. 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public

record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or which are essential to a plaintiff's claim and are attached to either the Complaint or the defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Legal Analysis

Defendants contend that the Complaint should be dismissed in its entirety. The Court will address each cause of action advocated by Plaintiff seriatim.

A.      Wrongful Use of Legal Proceedings

Count I of the Complaint asserts a claim under the Pennsylvania Dragonetti Act, 42 Pa.C.S.A.§ 8351. The elements of this cause of action are defined by statute and are quoted verbatim in the Complaint. Section 8351 provides as follows (emphasis added):

> (a) Elements of action.-A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: (1) He acts in a **grossly negligent** manner *or* **without probable cause** *and* primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; *and* (2) The proceedings have terminated in favor of the person against whom they are brought.

Although the statute enumerates only two elements, the first element has two sub-parts: (a) Defendant must have acted *either* in a grossly negligent manner *or* without probable cause; *and* (b) Defendant must have acted for an improper purpose. The term "probable cause" is defined in Section 8352 of the statute. The term "grossly negligent" is not defined in the statute, but in *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. 2001), the Court explained:

> Gross negligence is defined, inter alia, as a lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages. Black's Law Dictionary 1057 (7th ed.1999). Gross negligence has also been described as "the want of even scant care" and "the failure to exercise even that care which a careless person would use."

Plaintiff alleges that the Equity Action brought by Defendants in March 2008 constituted a wrongful use of civil proceedings. There is no dispute that the Equity Action was terminated in Gilarno's favor. Plaintiff has alleged that Defendants acted in a grossly negligent manner *and* that they lacked probable cause (i.e., both of the alternative statutory triggering events). Plaintiff has also alleged that Defendants filed the complaint for improper purposes, namely, that their motive was vindictive, retaliatory, an abuse of office, and due to personal dislike of Plaintiff. Complaint ¶ 67-68. Defendants argue that these averments are so conclusory as to not satisfy the *Twombly* plausibility standard.

The Court acknowledges the lack of specificity in the Complaint but concludes that the Dragonetti Act cause of action must be dismissed, in any event, for other reasons. Pursuant to 53 P.S. § 46202, a borough is specifically vested with the power to address nuisances by use of legal and/or equitable remedies (emphasis added):

> (5) Nuisances and dangerous structures. To prohibit and remove **any nuisance**, **including but not limited to** accumulations of garbage and rubbish and **the storage of abandoned or junked automobiles** and to prohibit and remove any dangerous structure on public or private grounds, or to require the removal of any such nuisance or dangerous structure by the owner or occupier of such grounds, **in default of which the borough may cause the same to be done**, and collect the cost thereof, together with a penalty of ten per cent of such cost, in the manner provided by law for the collection of municipal claims, *or* by action of assumpsit, *or* **may seek relief by bill in equity**.

The Borough of Freedom nuisance vehicle Ordinance is explicitly premised on this statutory

6

delegation of authority. *See* Complaint Exhibit D (Borough of Freedom Ordinance No. 414 dated June 12, 1972). Moreover, the Ordinance expressly provides for multiple, alternative remedies and states that those remedies "shall not be deemed mutually exclusive" and "may be employed simultaneously or consecutively." Defendants have argued strenuously that their filing of the Equity Action was entirely consistent with this authority.

Plaintiff has entirely failed to rebut this argument or even to address the impact of the "Remedies not Mutually Exclusive" provision. Instead, citing *City of Hazleton v. Smith*, 625 A.2d 748 (Pa. Commw. 1993), Plaintiff contends that the "Not Guilty" verdict rendered by the District Magisterial Judge protects Gilarno from double jeopardy and that Defendants' sole remedy was an appeal from that verdict. In *Smith*, a district justice determined that the defendant was not guilty of 35 alleged violations of a sidewalk ordinance. The city appealed and filed a civil complaint "as part of the appeal proceeding." *Id.* at 749. The Court held that pursuant to Pa. R. Crim. P. 86, the ordinance was "quasi-criminal" because it provided for imprisonment upon failure to pay the fine, and thus, that the City had "no right of appeal from the district justice's verdict of not guilty." *Id.* at 750. The Court then explained, in dicta, that if the City desired to maintain a right of appeal, it could amend its ordinance to delete the possibility of imprisonment such that an appeal would not be precluded by double jeopardy concerns. *Id.* This Court acknowledges that the Borough of Freedom Ordinance at issue in this case also provides for the possibility of imprisonment upon non-payment of a fine. Even so, *Smith* is not controlling of this situation because the holding in that case involved the right to take an appeal.[2] Here, the Borough did not file the March 2008 Equity Action "as part of the appeal proceeding,"

---

[2] The Court observes that *Smith* has not been cited as authority in any subsequent cases.

but instead, commenced a distinctly new civil lawsuit in a different court.  Standard Pennsylvania Practice § 132:206 states that "the constitutional prohibition against double jeopardy only protects against successive criminal prosecutions."  *See also Commonwealth v. Crawford*, 550 A.2d 1053, 1054 (Pa. Commw. 1988) (acquittal of DUI charge has no effect on outcome of subsequent civil proceeding to suspend drivers license).  The double jeopardy concerns discussed in *Smith* are not implicated by the Borough's efforts to obtain equitable relief under the facts and circumstances of this case.

In any event, no reasonable factfinder could conclude that Defendants were "grossly negligent" or acted "without probable cause" because the relief which they sought was explicitly authorized.  The Equity Action was premised on the Borough's express powers to pursue equitable relief as conferred by 53 P.S. § 46202(5) and the Ordinance.  *See, e.g., Feeley v. Borough of Ridley Park*, 551 A.2d 373 (Pa. Commw. 1988) (approving Borough's filing of equity action to enforce ordinance regarding nuisance cats).  Indeed, the Court of Common Pleas of Beaver County did not immediately dismiss the Equity Action on the "double jeopardy" grounds now raised by Plaintiff.  Rather, the suit progressed to the summary judgment stage and was decided on an entirely different basis -- that the alleged nuisance vehicles had not been specifically identified.  Nothing about the resolution of the state court action supports Plaintiff's argument that Defendants acted with gross negligence and/or without probable cause.

In summary, Plaintiff has failed to state a cognizable Dragonetti Act claim and Defendants' motion to dismiss Count I of Plaintiff's Complaint will be GRANTED.

B.     Section 1983 Claims

Gilarno also asserts various claims for the alleged violation of his constitutional rights. The Complaint reflects a lengthy "laundry list" of conclusory allegations, but it is clear that all of the alleged constitutional violations asserted in Counts II and III are made actionable by Section 1983. To establish a Section 1983 claim, Plaintiff must show: (1) deprivation of a "right secured by the Constitution and the laws of the United States"; (2) by a person acting "under color of state law." Defendants do not contest the existence of "state action," but argue that Plaintiff has not alleged any cognizable violation of his constitutional rights. Thus, the Court must "identify the exact contours of the underlying right said to have been violated and [ ] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In the Complaint, Gilarno avers that: (1) Defendants retaliated against him for being publicly critical of their operation of the Borough; (2) Defendants intended to drive him out of business, and he has lost substantial revenues due to being banned from the towing rotation; (3) Defendants ordered Borough employees not to speak with him; (4) the amendments to the Ordinance constituted "Bills of Attainder" as he owned the sole auto repair and towing business in the Borough; and (5) that different standards were applied to other property owners.

1.     Due Process Claim

The gravamen of Gilarno's Due Process claim is that Defendants were not entitled to file the March 2008 equity action. In his First Amended Memorandum of Law in Opposition to the Motion to Dismiss, Gilarno states that his "1983 claims are dovetailed with the underlying state claim of wrongful use of civil proceedings." Thus, Gilarno's due process claims suffer from the

same flaws as his Dragonetti Act claims, discussed above.

Plaintiff further recognizes that to establish a substantive due process violation, he must demonstrate official conduct that "shocks the conscience" and that he must establish a "protected property interest."  Even assuming, arguendo, that the Dragonetti Act claims were actionable, nothing about the Defendants' alleged conduct clears the high bar of "shocking the conscience." The Court further notes that Gilarno has not alleged a plausible property interest in continued future business with the Borough.  The case on which Plaintiff heavily relies, *Schlier v. Rice*, 630 F.Supp.2d 458 (M.D. Pa. 2007)), explained at length that the removal of a towing company from an approved list in that case did ***not***  implicate due process.  *Id.* at 475-77.  In sum, Gilarno's due process claim will be dismissed.


       2.       "Reverse" First Amendment Claim

Gilarno asserts two distinct First Amendment claims.  Initially, Gilarno alleges that *his* First Amendment rights were violated when the Borough solicitor instructed Borough employees not to talk to him.  Complaint ¶¶ 77-78.  There are multiple flaws with this theory.  At no point does Gilarno allege that *he* was prevented from speaking -- the only apparent restriction was imposed on Borough employees.  In essence, Gilarno is asserting a right to be spoken to.  He has offered no authority for this proposition.  Even assuming that Gilarno has standing, for a speech restriction on a public employee to be actionable a plaintiff must establish that: (1) the speech involves a matter of public concern and the employee's interest in the speech outweighs the government employer's countervailing interest in providing efficient and effective services to the public; (2) the speech must have been a substantial or motivating factor in the alleged retaliatory

action; and (3) the employer would not have taken the adverse action but for the protected conduct. *See Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004). The Complaint has not alleged these elements and this theory does not fit neatly into the facts and circumstances of this case. Moreover, the exhibits attached to the Complaint disclose that the speech restrictions were imposed in light of the ongoing litigation between the parties, and were limited to litigation topics. *See, Schlier*, 630 F. Supp.2d at 467 ("Following counsel's advice with regard to ongoing litigation is not synonymous with retaliating against the opposing party in that litigation.") Nor does the suspension of a Borough police officer for speaking to Gilarno suffice. *Engquist v. Oregon Dept. of Agr.*, 128 S.Ct. 2146, 2152 (2008) ("First Amendment protects public-employee speech only when it falls within the core of First Amendment protection-[i.e.,] speech on matters of public concern-and when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices; absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior").

In summary, Gilarno has failed to allege a plausible claim for a violation of **_his_** First Amendment rights based on restrictions imposed on Borough employees.

      3.     First Amendment Retaliation Claim

Alternatively, while not artfully pled, it appears that Gilarno has also attempted to assert a First Amendment Retaliation Claim. *See, e.g.,* Complaint ¶ 72. As to this claim, Gilarno's reliance on *Schlier*, 630 F. Supp.2d at 458, may be justified. The *Schlier* Court explained that the

First Amendment Retaliation theory "applied not only to employees but also to independent contractors and to service providers who are 'removed from an official list of contractors authorized to perform public services.'" *Id.* at 465-66 (citation omitted).

To establish a First Amendment Retaliation claim under Section 1983, a plaintiff must prove the following elements: (1) he engaged in constitutionally protected conduct; (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiff's protected conduct. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003). If Plaintiff makes out a prima facie case, the burden shifts to Defendants to demonstrate that they would have taken the same action regardless of the protected activity. *Schier,* 630 F. Supp.2d at 466.

In the Complaint, Gilarno avers that he spoke out regarding Defendants' "administration and operation of the Borough" on multiple occasions. Gilarno has also pled that he served as the "exclusive towing entity" for the Borough from 1993 through 2007 and that his public criticism of the Mayor and council members was a "substantial factor" in his removal from the towing list. Such averments, however, are the kinds of formulaic legal conclusions that no longer suffice under the *Twombly* standard. The Complaint is completely lacking in any detail of factual allegations regarding Gilarno's alleged protected activity; the alleged causal connection between that activity and the loss of business; and the specific conduct of each of the numerous Defendants. In sum, the Complaint has failed to allege sufficient facts to establish a plausible First Amendment Retaliation claim and Defendants' motion to dismiss this claim will be GRANTED.

4.      Equal Protection Claim

Gilarno also purports to advance a "class of one" Equal Protection claim. The gravamen of this claim is that the Borough does not like the nature of Gilarno's active auto-repair business (the only such business in the Borough) and is using the nuisance Ordinance as a backdoor attempt to re-zone his property. Defendants contend that the Complaint fails to allege even one instance of disparate treatment of a similarly situated individual.

In *Engquist*, 128 S. Ct. at 2153, the Supreme Court recognized that a Plaintiff may state a valid claim under the Equal Protection Clause by alleging that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Nevertheless, the Court explained that "class of one" cases require a clear standard against which departures can be readily assessed and that discretionary enforcement decisions (such as the issuance of a speeding ticket to one driver among many), do not implicate the Equal Protection clause. *Id* at 2153-54. Similarly, in the absence of any allegation that Defendants targeted Gilarno for disparate enforcement of the nuisance vehicle Ordinance due to his membership in an "identifiable group," the Complaint fails to assert a plausible Equal Protection claim and Defendants' motion to dismiss this claim will be GRANTED.

5.      Bill of Attainder Claim

The Complaint contains a passing reference that Defendants' actions have violated Gilarno's rights under the Bill of Attainder clause of the United States Constitution. As noted above, Plaintiff has not pursued this theory in his memorandum of law, or otherwise attempted to defeat the motion to dismiss this claim, and the Court presumes that it has been abandoned. In

any event, such a claim would be without merit. In *Nixon v. Administrator, GSA*, 433 U.S. 425, 538-39 (1977), the Supreme Court explained that bills of attainder require two elements: (1) a specific designation of persons or groups as subjects of the legislation; and (2) an arbitrary deprivation of rights without notice, trial, or other hearing. The nuisance vehicle Ordinance (Complaint Exhibit D) does not contain the requisite specific designation, but applies broadly by its terms to "any person" and Gilarno has had appropriate notice and opportunity to contest the alleged violations of the Ordinance. Thus, the Complaint has not alleged a plausible Bill of Attainder claim.

In summary, the Complaint has failed to state a plausible Section 1983 claim upon which relief may be granted.

Other Arguments Raised by the Parties

Although the Court has concluded that the motion to dismiss should be granted in its entirety, it will briefly address several other contentions raised by the parties to provide guidance in the event of an amended complaint. As Defendants point out, municipalities are generally exempt from punitive damages. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910 (3d Cir.1991). Nevertheless, punitive damages may be recovered against individuals under the Dragonetti Act and § 1983. The Court is skeptical that punitive damages would be justified under the facts of this case.

Defendants contend that they are entitled to absolute immunity because their acts were legislative in nature. In *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 172 (3d Cir. 2006), the Court explained that "when zoning officials are enacting or amending zoning legislation, their acts are substantively legislative, and when they are enforcing already existing

zoning laws, their acts are administrative, executive, or ministerial." To the extent that Plaintiff challenges the *enforcement* of the nuisance vehicle Ordinance, the doctrine of legislative immunity would likely not apply. To the extent that Plaintiff seeks to challenge a legislative action, Defendants may reassert this defense.

Leave to Amend Complaint

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *Accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* The district court may dismiss the action if the plaintiff does not file an amended complaint within that time, or if the plaintiff files a notice of his intent to stand on the complaint as filed.

Defendants have raised numerous meritorious legal challenges. If Gilarno chooses to file an amended complaint, it will be important to address all of these alleged shortcomings to assure that the amended complaint contains sufficient factual allegations to render the claim(s) "plausible" in compliance with the pleading standard set forth in *Twombly* and *Phillips*.

Conclusion

In summary, Defendants' Motion to Dismiss the Complaint will be GRANTED in all respects. Plaintiff will have the opportunity to file an amended complaint if he so chooses.

An appropriate Order follows.

                 McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY GILARNO individually and doing business as GILARNO'S AUTO REPAIR INC. also known as GILARNO'S AUTO REPAIR,<br>Plaintiff,<br><br>v<br><br>THE BOROUGH OF FREEDOM, THE BOROUGH COUNCIL OF THE BORO OF FREEDOM, JOHN V. KAERCHER, VICTORIA H. GRECO, JAQUELINE GOLLETTI, DARL ALLMAN, DEBORAH DEDOMINICUS individually and in their capacity as Council persons and DONALD ZAHN individually and in his capacity as Mayor of the Borough of Freedom<br>Defendants. | )<br>)<br>)<br>)<br>) 2:10-cv-71<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 22nd day of April, 2010, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION TO DISMISS (Document No. 4) filed by Defendants is **GRANTED**. The MOTION TO STRIKE PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Document No. 9) is **DENIED AS MOOT**.

Plaintiff may file an amended complaint on or before May 6, 2010, or he may elect to stand on his original complaint as filed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Mark A. Ciccarelli, Esquire
Email: mark.ciccarelli@comcast.net

Kyle T. McGee, Esquire
Email: kmcgee@margolisedelstein.com
Charles H. Saul, Esquire
Email: csaul@margolisedelstein.com

16